IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANA SERAFIN, BAILEY SERAFIN,
and LIXEY FISH COMPANY,


                Plaintiffs,

v                                          Case No:  1:23-CV-412

THOMAS GONIEA, in his individual
and official capacity; JAMES
DEXTER, in his individual and
official capacity; SETH HERBST,
in his individual and official
capacity; and THE MICHIGAN
DEPARTMENT OF NATURAL RESOURCES,

                Defendants.
_____/



          PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

               DEFENDANTS' MOTION TO DISMISS

          BEFORE THE HONORABLE PAUL L. MALONEY
               United States District Judge

               Kalamazoo, Michigan
               Wednesday, July 24, 2024

```
 1      APPEARANCES:

 2      For the Plaintiff:  MR. BARRETT YOUNG
                            Butzel Long, P.C.
 3                          150 West Jefferson Avenue, Suite 100
                            DetroitMichigan 48226
 4                          (313) 983-7465

 5                          MR. GARETT LEE KOGER
                            Butzel Long, P.C.
 6                          123 West Allegan Street, Suite 400
                            Lansing, Michigan 48933
 7                          (989) 295-7975

 8
        For the Defendant:  MS. ECHO ALOE
 9                          MS. KELLY M. DRAKE
                            Assistant Attorney General
10                          Attorney for State Defendants Environment,
                            Natural Resources, & Agriculture Division
11                          P.O. Box 30755
                            Lansing, Michigan 48909
12                          (517) 335-7664

13
        REPORTED BY:        Lauret J. Henry, CSR-6469, RPR
14                          Federal Official Court Reporter
                            410 West Michigan, Suite 137
15                          Kalamazoo, MI 49007
                            (269) 720-9529

16

17

18

19

20

21

22

23

24

25
```

1    Kalamazoo, MI

2    July 24, 2024

3    1:35 p.m.

4                          RECORD

5         THE COURT:  You may be seated.  Thank you.  This is

6    File Number 23-412, Serafin, et al., versus Goniea, et al.

7    This matter is before the Court for motion hearings on

8    plaintiffs' motion for partial summary judgment and

9    defendants' motion to dismiss.  The record should reflect that

10   Attorneys Koger and Young represent the plaintiffs.  Attorneys

11   Aloe and Drake represent the defendants.  The Court is ready

12   to proceed.  Let's do the motion to dismiss first, and then

13   we'll go on from there.

14        Counsel, you may proceed.

15            MS. ALOE:  Good afternoon, your Honor.

16            THE COURT:  Good afternoon.

17            MS. ALOE:  Assistant Attorney General Echo Aloe on

18   behalf of the state defendants.

19        Under Michigan law, there is no right to have a post-1968

20   commercial fishing license renewed.  This is fatal to every

21   claim in plaintiffs' amended complaint, which the Court should

22   dismiss for three reasons primarily.  First, plaintiffs failed

23   to establish that this Court has jurisdiction over the

24   Michigan Department of Natural Resources, so to the extent

25   that any claim, regardless of the relief, is brought against

1   the department, or against its employees in their official

2   capacity for money damages, the same is barred by the Eleventh

3   Amendment.

4        Second, each of plaintiffs' 1983 claims fail as a matter

5   of law under both the ex parte Young and qualified immunity

6   analyses because -- because a commercial fishing license

7   issued after 1968 does not renew as a matter of course.

8        And finally, the third reason is that the jurisdictional

9   and substantive defects discussed above dispose of all of the

10  federal claims, leaving plaintiffs' requests under the

11  Declaratory Judgment Act, which is not an independent cause of

12  action, and their state law claims, which this Court should

13  not exercise subject matter jurisdiction over.

14       Turning to the first argument, the State will rest on the

15  arguments laid out in our brief in support of motion to

16  dismiss and reply in support unless if your Honor has any

17  questions for me.

18            THE COURT:  Not at the moment.  Go ahead.

19            MS. ALOE:  So the second reason, and this is really

20  the crux of this case, to get around the employee's right to

21  sovereign immunity for any sort of injunctive relief under ex

22  parte Young or their right to qualified immunity for

23  plaintiffs' individual capacity claims, plaintiffs need to

24  show that they have a constitutionally protected property

25  right, and they cannot do that here.

1    From Seminole cases of Board of Regents v Roth, and Perry

2    versus Sindermann, the Supreme Court has provided that a

3    property right exists where a plaintiff can show the right

4    exists under law or there was a reasonable basis to support

5    that a property right exists.  To quote Sindermann, "A

6    person's interest in a benefit is a property interest for due

7    purposes if there are such rules or mutually explicit

8    understandings that support his claim of entitlement to the

9    benefit."  Here, Part 473, commercial fishing of the Michigan

10   Natural Resources and Environmental Protection Act does not

11   provide plaintiffs a legal basis to claim a property right and

12   the continued renewal of the Harbor Beach license.

13   Under the substantive law, plaintiffs have licenses that

14   fall under the grandfathering provision.  It is not disputed

15   in this matter that the Harbor Beach is not covered by that

16   provision.  Thus when a license issued under Part 473 doesn't

17   fall under the grandfathering provision, then 324.47302(1)

18   applies, and this leaves it to the discretion of the

19   department whether or not to issue a license.

20   As Med Corp., Inc., v City of Lima at 296 F.3d 404 at

21   410, which is a Sixth Circuit 2002 opinion, quote, "A party

22   cannot possess a property interest in receipt of a benefit

23   when the benefit is wholly discretionary."  Thus, the first

24   way that Roth and Sindermann instruct us to determine if there

25   is a property right for due process purposes is under the law.

1    That's ruled out here.

2        The next way, as seen in Perry versus Sindermann, is

3    there might be a situation under which there is a mutual

4    understanding that provides an individual with a protected

5    property right.  In Sindermann, it was the faculty handbook

6    that gave the plaintiff, at least as the Supreme Court said,

7    the right to show whether that property right exists.  But

8    here, on the face of each license issued to the plaintiffs to

9    fish at Harbor Beach, the license explicitly said it expired

10    on a date certain, which is also under Part 473, but it also

11    said that the license was not subject to automatic renewal and

12    that either party could refuse to renew it without cause until

13    such time as the commercial fishing statute was amended.

14        Given these facts, it's unreasonable to believe that

15    plaintiffs had any legitimate claim of entitlement to renew,

16    rather than had a unilateral expectation that the department

17    would continue to renew the Harbor Beach license.

18        Under these Seminole cases, the plaintiffs don't have a

19    property right, and this is fatal to each 1983 claim they

20    bring against the state defendants because they all hinge on a

21    protected property right.

22            THE COURT:  What impact does the Bundo case have?

23    The liquor license case.

24            MS. ALOE:  The Bundo case has no impact on the facts

25    here.  Bundo also relied on Roth and Sindermann to decide

1    whether under the Michigan liquor license act, if that

2    substantive law gave that plaintiff a protected property right

3    and renewal, and the Court in Bundo held that under the

4    applicable statute, renewal was to take place as a matter of

5    course.  That's distinguishable from Part 473, which only

6    provides that if a license was issued on or before November

7    15, 1968, that the licensee has a right to renewal.

8         And again, here, the Harbor Beach license there's no

9    dispute was issued after the grandfathering provision, and so

10   it can't renew under a matter of course under the law.

11                THE COURT:  All right.  Thank you.

12                MS. ALOE:  And then just briefly, the third reason

13   is without that property right, all of plaintiffs' federal

14   claims fail, and they have brought claims asking for

15   declaratory judgment under the Declaratory Judgment Act, which

16   is not an independent cause of action, and so if the Court

17   dismisses their 1983 claims, it must dismiss those claims as

18   well, and then the Court should not exercise supplemental

19   jurisdiction over plaintiffs' state law claims for the reasons

20   outlined in our brief.

21                THE COURT:  Help me with the collision between the

22   Administrative Procedures Act, which the plaintiff directs me

23   to, and NREPA in this context.  You agree that they're in

24   conflict, correct, I assume?

25                MS. ALOE:  I agree that it's a bit of a perplexing

1    argument that plaintiffs raise that both the Harbor Beach

2    license did not expire under the Administrative Procedures Act

3    but also that the state took their property when it refused to

4    renew it.  But the inconsistency of their arguments doesn't

5    just undermine their position here, it's really an irrelevant

6    matter.  Even assuming the Administrative Procedure Right or

7    Act overrides the explicit provision in Part 473 that all

8    commercial fishing licenses expire on December 31 of the year

9    they were issued, it doesn't change anything because, again,

10   going back to Bundo, we look at the substantive law, not the

11   Administrative Procedures Act, to determine whether a person

12   has a protected property right for the due process.  Under

13   Part 473, it's clear that the Harbor Beach license does not

14   fall into the grandfathering provision, and as such, no right

15   exists.

16         As I've discussed, when the Court considers how to decide

17   whether a property right exists, it uses Roth-Sindermann

18   framework, and so whether the license expired on December 31

19   of 2022, in conjunction with both the law and the face of the

20   Harbor Beach license itself, or if it expired on March 1,

21   2023, when the department decided to issue plaintiffs their

22   Saginaw Bay licenses and not their Harbor Beach license, it

23   doesn't change the analysis before this Court because there's

24   still no right to renewal.

25                THE COURT:  Thank you.  You're closest to the

1    podium, Mr. Koger, are you going to argue?

2              MR. KOGER:  This might be too much information, but

3    I was in the state of Georgia getting sworn into the State Bar

4    of Georgia, got tied up in the Atlanta debacle, Delta

5    Airlines.

6              THE COURT:  My sympathy.

7              MR. KOGER:  Bought a car, drove back home.

8              THE COURT:  From Atlanta?

9              MR. KOGER:  Yes, your Honor.  We were already

10   planning on buying a car, a mini van for the third kid, but

11   Mr. Young is well prepared and I have full faith in his

12   abilities.

13             THE COURT:  That's fine.  I didn't realize you had

14   that difficulty.  Delta in particular had major issues if I

15   understand the press correctly.

16             MR. KOGER:  It was a nightmare.  Especially for the

17   little babies that were stranded in the airport.  But that's

18   probably too much information.  Thank you.

19             THE COURT:  Mr. Young, you may proceed sir.

20   Welcome.

21             MR. YOUNG:  Thank you, your Honor.

22             THE COURT:  Is this the first time you have been

23   here, Mr. Young?

24             MR. YOUNG:  Yes, sir, your Honor.

25             THE COURT:  Well, welcome.

1          MR. YOUNG:  Thank you.

2          Your Honor, I would like to focus on the Administrative

3     Procedures Act aspect of this, because I think that really

4     goes to the heart of the dispute.  And so the defendants, in

5     their opposition to our motion for partial summary judgment,

6     conceded that we had a property right in the Harbor Beach

7     license.  Now, their language is under the controlling law,

8     plaintiffs' property right in the Harbor Beach license expired

9     on December 31, 2022.  That concession is fatal to them

10    because, as was discussed a bit, we have the Administrative

11    Procedures Act provision that states, and I'll give you the

12    language, "When a licensee makes timely and sufficient

13    application for renewal of a license or a new license with

14    reference to activity of a continuing nature, the existing

15    license does not expire until a decision on the application is

16    finally made by the agency, and if the application is denied

17    or the terms of new license are limited, until the last day

18    for applying for judicial review of the agency order or a

19    later date fixed by order of the reviewing court."  That's MCL

20    Section 24.291(2).  What that means here, your Honor, is that

21    we applied for the license timely, which I don't think is

22    contested --

23          THE COURT:  Please don't hit the microphone.  It

24    will take me months to get it replaced.

25          MR. YOUNG:  Sorry, Your Honor.

1          THE COURT:  That's okay.  I'm joking with you.  Go

2     ahead.

3          MR. YOUNG:  Plaintiffs timely applied for their

4     license.  Second, there's no final agency order, there's no

5     final agency decision, and so to harmonize these two statutory

6     provisions, which you recognize the tension between, the way

7     to harmonize it is like this:  If as here there's timely

8     application, the license either does not expire or it's

9     rendered unexpired; otherwise, the government could play games

10    with this and just delay the time for applying until after

11    expiration, which would then be the government kind of trying

12    to avoid the reach and the consequences and limitations and

13    restrictions that the Administrative Procedures Act imposes,

14    and that can't be the answer, your Honor.

15         THE COURT:  Well, the discretion, if I read the

16    statute correctly, and come back at me if you disagree, the

17    NREPA statute appears to grant to the department very

18    significant discretion in the terms of the issuance of the

19    licenses.  Would you agree with that?

20         MR. YOUNG:  The statute does grant discretion to the

21    agency, but it's not unlimited discretion.  It is cabined by

22    other provisions in the commercial fishing statute itself, but

23    it's also limited and restrained by the Administrative

24    Procedures Act itself.  And in the very same statute on a

25    later section, Section 4, there's a provision that

1    specifically contemplates the Administrative Procedures Act

2    applying when the agency is taking an adverse action on

3    someone's license.  And I can -- I've got the language here.

4    It's MCL Section 324.47302, "The department may suspend or

5    revoke any license issued under this part if the licensee

6    fails to fulfill or violates any of the conditions, terms, or

7    restrictions of the license.  The department shall afford the

8    licensee a hearing in accordance with the Administrative

9    Procedures Act of 1969, Act Number 306 of the Public Acts of

10   1969."  The citation goes on, "Any person whose license has

11   been suspended or revoked is not eligible to apply for or

12   receive license for the ensuing two calendar years following

13   the suspension or revocation," so the statute itself

14   contemplates this interaction between the commercial fishing

15   statute and the Administrative Procedures Act.

16       Also, the adverse action here, the failure to renew, as

17   you mentioned, the agency has discretion, but it needs to

18   have -- it needs to afford notice and an opportunity to be

19   heard to a license holder.  My clients, they had a license.  I

20   don't think there's any dispute on that.  Again, they timely

21   applied.  The agency wanted to take an adverse action, which

22   it can do, but subject to procedures.  And because they timely

23   applied, and because of the way the Administrative Procedures

24   Act interacts here, there was a protected property interest.

25   It never went away.  Maybe there's some counterfactual world

1    without the Administrative Procedures Act, but we're not in

2    that world.

3            THE COURT:  How do you read the "Notwithstanding"

4    clause at the beginning of 47302(1)?  It reads,

5    "Notwithstanding the provisions of this or any other part or

6    act," and then it goes on for a while.

7            MR. YOUNG:  I see, your Honor, yes.

8            THE COURT:  Why doesn't that eliminate any impact to

9    the Administrative Procedures Act on this question when the

10   statute says "notwithstanding"?

11           MR. YOUNG:  So that is an impermissible delegation

12   to the agency.  So the legislature cannot --

13           THE COURT:  Under state law?

14           MR. YOUNG:  Yes, under state law.  The Michigan

15   legislature lacks the authority to empower the agency to pick

16   and choose which other laws will govern and restrain the

17   agency subject to the Fourteenth Amendment's due process

18   clause.

19           THE COURT:  Well, the legislature, legislative and

20   executive branches of government are the policymakers for the

21   state, correct?

22           MR. YOUNG:  Correct.

23           THE COURT:  I mean, what meaning should I -- in the

24   context of this case, what meaning should I place in the

25   "notwithstanding" clause, vis-a-vis the Administrative

1    Procedures Act?  I mean, I can't read it out of the statute.

2    I've got to give it meaning.  And in the context of this case,

3    there's a major conflict between the discretion granted to the

4    department under NREPA and the four squares of the

5    Administrative Procedures Act section that you have cited to

6    me.  But in analyzing 47302(1), I've got to give some meaning

7    to the "notwithstanding" clause which, which, given its plain

8    meaning, would appear to say that NREPA trumps the

9    Administrative Procedures Act in the context of the subject

10    matter of this particular section of NREPA.  So with that

11    introduction, I'll turn it over to you.  Go ahead.

12             MR. YOUNG:  It's an excellent question, your Honor,

13    and I think the best way to harmonize this tension is that

14    it's not our position or -- the agency has authority to take

15    certain actions, but only if it follows the rules, only if it

16    gives the process that's due both under the United States

17    Constitution's Fourteenth Amendment due process clause but

18    also under the Administrative Procedures Act.

19        So the Administrative Procedures Act is not a full

20    barrier to the agency reaching some sort of conclusion, but

21    rather it just -- it acts as guardrails to make sure that the

22    government doesn't run roughshod over people's property

23    rights.  And so it's -- it's not a full-on barrier.  It's just

24    a constraint.  So the agency, if it did follow the rules, it

25    potentially could refuse to renew a license, or it potentially

1    could refuse to add species or what have you, it just has to

2    follow the rules.  And here what we're saying is that the

3    government took adverse action on my clients' property rights

4    without following the rules.  That's really the heart of it.

5    And so that is a way to alleviate the apparent tension between

6    the commercial fishing statute on the one hand and the

7    Administrative Procedures Act on the other hand.

8         Now, I'll concede it would be a different case if the

9    Administrative Procedures Act just said, like, agency, you

10   cannot reach X conclusion, but that's not what it's saying.

11   It's just laying out a process if the government wants to

12   reach certain conclusions and make certain adjustments to

13   people's property rights, so to speak.

14        Does that answer your question, your Honor?

15        THE COURT:  I appreciate the response.  If I

16   appreciate the chronology here, your client had a research

17   permit from '15 to '19.  Am I right so far?

18        MR. YOUNG:  I believe that's correct.  I'd have to

19   double-check to be sure, but there was that initial phase of

20   it being a research permit.

21        THE COURT:  When is it -- what year do you believe

22   from your perspective that your client was possessing a

23   property right to this particular license?  Because clearly

24   the research permit wasn't it, right?  Am I right about that?

25        MR. YOUNG:  Correct.

1          THE COURT:  Okay.  So when from your perspective did

2     your client process a property right which is the subject

3     matter of the violation of the Constitution that you believe

4     is appropriate here?

5          MR. YOUNG:  So, your Honor, in 2020, that is when we

6     switched from the research permit to a commercial fishing

7     license.

8          THE COURT:  All right.  In 2020, if I understand it

9     correctly, there were conditions attached to that license,

10    correct?

11         MR. YOUNG:  That is an excellent question, your

12    Honor.

13         THE COURT:  I'm really glad I ask good questions,

14    because that's any intention.

15         MR. YOUNG:  I'm happy to discuss these conditions.

16    So, your Honor, on the face of the license, there are apparent

17    conditions; however, the agency lacks the authority to impose

18    any old condition it wants.  And, yes, in the statute there is

19    a subsection that contemplates other conditions on licenses.

20    That is true.  We do not dispute that.  What we dispute,

21    however, is the permissible scope of those conditions, and the

22    way that we encourage you to understand that provision is by

23    looking at the example conditions that are right there in the

24    language, and those examples go to how commercial fishing is

25    conducted as opposed to whether commercial fishing can be

1    conducted.  And those examples are the right to inspect

2    licensee's fishing operations in the waters, the right to

3    inspect on board, like on board the vessel, and then the right

4    to inspect the fishing operations ashore.  So those examples

5    give a good indication of the nature and scope of what these

6    other conditions can be.  So when the agency tries to say,

7    well, other conditions, and we can just kind of put in what we

8    want to put in, that doesn't fly with the plain ordinary

9    meaning of the text that we have there in the statute.

10        And then additionally, the government is always obligated

11    to abide by the U.S. Constitution, the Michigan Constitution.

12    It can't contract around that.  It can't form agreements to

13    get around that.  And so these conditions, here especially

14    this, what we'll call the Sophie's Choice condition of you can

15    use Harbor Beach licenses or the Saginaw Bay hostage licenses,

16    that is a condition that goes beyond the agency's authority to

17    impose, even if the person or entity the government purports

18    to be interacting with is supposedly on board.

19        Because like I said, the government always has to abide

20    by the Constitution, so even if it says to the other person,

21    oh, are you okay, the other person says, sure, that doesn't

22    absolve the government of its obligation.

23        Additionally, the government's position, at least

24    implicitly, supposes that someone can be on equal footing or

25    near equal footing with the government during bargaining, but,

1    I mean, that's just not so.  The government has the monopoly

2    and the legitimate use of force, and because of that, we have

3    the unconstitutional conditions doctrine to precisely guard

4    against a situation where the government has hugely more

5    bargaining power that it can impose and bear against anyone

6    else.

7         THE COURT:  The conditional license of 2020 gets

8    reissued in 2021 without incident, for lack of a better term,

9    agreed?  Am I right about that?

10        MR. YOUNG:  Yes, although our position is that there

11   are not conditional licenses or unconditional licenses.  There

12   are just licenses.  But otherwise --

13        THE COURT:  All right.  In 2022 is the point at

14   which the department comes back or comes to your client and

15   says essentially, this is my words, not theirs, they wanted to

16   retire the Saginaw Bay licenses and made it clear to your

17   client that if they wanted the Harbor Beach license he was

18   going to have to relinquish the Saginaw Bay licenses?  Am I

19   right?

20        MR. YOUNG:  Yes, your Honor.

21        THE COURT:  Okay.  What's wrong with that?  Isn't

22   the department entitled to -- apparently, and I'm reading

23   between the lines here, but apparently the department made a

24   policy judgment that they wanted to retire the Saginaw Bay

25   licenses, probably because they were subject to the -- they

1    were prior to 1968.  Again, I'm inferring.  Why can't the

2    department make that judgment?

3         MR. YOUNG:  Well, so, your Honor, it might be

4    possible that the department could do that, but subject to the

5    applicable processes.  And here, your Honor, the department

6    never substantiated its position that it would be somehow

7    better for the fisheries of Michigan for these licenses to be

8    retired.  Instead the agency has adopted a kind of

9    just-trust-us perspective, and I just want to remind your

10   Honor we are at the pleading stage, so to the extent that the

11   government is trying to offer a different version of the

12   facts, that type of argument is not available to the

13   government at this stage.

14        THE COURT:  All right.  Your client has never been

15   denied the Saginaw Bay licenses, correct?

16        MR. YOUNG:  We have the licenses.  We have been --

17   we have been fishing the Harbor Beach license.  And then the

18   government, as you said, started to say, well, no, you need to

19   pick, and then we refused.  Another year goes by, and the

20   government says, no, you really need to pick, and, again, we

21   refuse.  And then the government says, okay, you don't get

22   Harbor Beach, you have Saginaw, the Saginaw Bay hostage

23   licenses.  And then subsequent year after that, again, we

24   apply for both sets, and then the government says, not only do

25   you not get Harbor Beach, it doesn't exist anymore, so not

1    just failure to renew, but trying to remove it from ever

2    having occurred.

3        But, your Honor, there's another thing I want to

4    highlight.  There's two sets of Saginaw Bay licenses.  There's

5    the hostage ones, the ones that are part of the Sophie's

6    Choice, but then there's another set which we call the Saginaw

7    Bay species licenses.

8            THE COURT:  Saginaw Bay?

9            MR. YOUNG:  Species.

10            THE COURT:  Oh, species?

11            MR. YOUNG:  And with those, your Honor, we requested

12    certain species to be added and the agency declined, but,

13    again, never gave us notice or an opportunity to be heard.

14    Does that answer your question?

15            THE COURT:  Okay.  Yes.  Thank you.

16            MR. YOUNG:  Let's see.  Your Honor, regarding ex

17    parte Young and sovereign immunity, we'll largely rely on the

18    paper briefing on that, but I just will emphasize that the

19    government's argument really seems to circle around this idea

20    of the lack of a constitutional violation, and as we have been

21    discussing in our paper briefing, we assert that they're --

22            THE COURT:  Right.  And in order for there to be a

23    constitutional violation, whether it be procedural due process

24    or substantive due process, your client has to have a property

25    interest.

```
1              MR. YOUNG:  Uh-huh.

2              THE COURT:  In the license, correct?

3              MR. YOUNG:  Correct.  And, your Honor, I just want

4    to emphasize that there's the Harbor Beach license, and

5    there's a property right in that license for the reasons

6    described with the APA, fits into that.  But also, your Honor,

7    there's the hostage licenses, the ones -- the Saginaw Bay

8    ones, part of Sophie's Choice, and I don't think anyone

9    disputes that we have a property right in those because those

10   are pre-1968.  And the -- we were denied due process and

11   substantive process with those by the -- or rather it's an

12   unconstitutional condition and a taking, rather, when the

13   government says, you have got this property right, but for you

14   to use it you need to give up this other piece of property

15   that you have, the Harbor Beach license.  That condition was

16   also a violation.

17        And then additionally a third set of property, the

18   species licenses, when we apply and say, hey, we would like to

19   have these species added, government says no, but without

20   notice and an opportunity to be heard, that is also a

21   constitutional violation.

22             THE COURT:  All right.  As far as the -- let me see

23   if I understand what appears to be a separate issue on the

24   issue of the expansion of the species licenses.  That was

25   never tied to Harbor Beach, correct?  That was a separate --
```

1    well, I should ask the question.  Was that a separate request

2    by your client unrelated to any tie to the Harbor Beach

3    situation?

4           MR. YOUNG:  Yes, your Honor, it -- they were --

5    unlike the hostage Sophie's Choice Saginaw Bay licenses where

6    those are intertwined with Harbor Beach, the species licenses

7    were separate, though requests were made at the same time, but

8    they're not kind of interlocked like the first two sets.

9           THE COURT:  And the species license, recognizing you

10   want expansion, but the species licenses were never denied to

11   your client, correct?

12          MR. YOUNG:  We have the licenses, but the government

13   refused our request to make the species changes and also did

14   not give us notice or an opportunity to be heard on that

15   issue.

16          THE COURT:  All right.  Thank you.  I understand.  I

17   understand your argument in that regard.  Okay.  Thank you.  I

18   don't mean to cut you off.

19          MR. YOUNG:  And then regarding qualified immunity,

20   we'll largely rely on our papers, but just a few points to

21   emphasize there.  A reasonable government official would

22   understand that the conduct here amounted to constitutional

23   violations.  The constitutional rights here are not new.

24   Procedural due process, substantive due process, retaliation,

25   unconstitutional conditions, all of that has been well settled

1    for years and years.  So that's all I'll say unless you have

2    more questions about qualified immunity.

3              THE COURT:  No, I do not.

4              MR. YOUNG:  And then another point I wanted to bring

5    up, your Honor, is the government has not engaged with

6    Plaintiff Bailey and -- Plaintiff Bailey and Plaintiff Dana,

7    two legally distinct entities.  There's been interactions and

8    communications between the government and Plaintiff Dana, but

9    Plaintiff Bailey, again, that's a distinct legal entity, has

10   his own constitutional rights, and I think it's really to the

11   government's sort of peril to just kind of ignore him.  So any

12   kind of analysis that the government has done regarding Dana

13   does not on its own just automatically get punted over to

14   Bailey.

15        For instance, the government has arguments about, oh, it

16   said this to Dana and Dana said this back, but it doesn't

17   simultaneously offer arguments concerning, well, what did

18   Bailey say, what did Bailey do.  And so I just want to

19   emphasize for the Court that Bailey has his own distinct

20   independent constitutional rights that also need to be

21   adjudicated.  And I think the government is bordering on

22   forfeiture by not offering arguments specifically about

23   Bailey.

24             THE COURT:  Thank you, Counsel.

25             MR. YOUNG:  Thank you.

1          THE COURT:  Counsel?

2          MS. ALOE:  Your Honor, there are several things I

3    heard brother counsel mention that I would like to respond to.

4    The first is this idea of retiring, exchanging the licenses,

5    which they use the colorful language of Sophie's Choice to

6    describe this.  But as the record clearly shows at ECF 43-2,

7    1366-1368, these were Dana Serafin's offers to exchange

8    licenses for the opportunity to fish at Harbor Beach going

9    back to a time when I was still in high school.  So it is well

10   established that these are his --

11         THE COURT:  Should I ask who the president of the

12   United States was at the time?  But I won't.  Okay.  Go ahead.

13         MR. YOUNG:  Okay.  All right.  I think I know it,

14   but, you know, I have property rights on my mind today.

15         As far as this idea of conditions, your Honor has already

16   ruled on this in denying plaintiffs' motion for preliminary

17   injunction back in May of 2023.  Your Honor held that the MDNR

18   has broad power, to quote, "This broad power allows the MDNR,

19   through the powers conferred to it by the state legislature,

20   to place other conditions, terms, and restrictions on licenses

21   as provided in Section 324.47302(2)(e).  The Court finds that

22   the conditional/non-automatic renewable language in the Harbor

23   Beach license allows plaintiffs or the state to reject future

24   issuance of licenses without cause until such time as a

25   permanent license is negotiated, is entirely valid."  I

1    believe that on the face of the Harbor Beach license, you

2    know, you asked brother counsel about the timeline here, and

3    your Honor's correct from '15 to '19 they were issued a

4    research permit, and then it changed to a conditional license.

5    THE COURT:  I take it the state had some interest in

6    finding out what the state of the whitefish population was in

7    this particular piece of the lakes?

8    MS. ALOE:  Of course it did, so that is part of the

9    reason that it decided to enter into this agreement with the

10   plaintiffs.  And as far as the conditions go, at ECF 24 498

11   Note 9, again quoting your Honor, in that note the Court says

12   that, you know, above the line, the condition -- the Court

13   says, "Plaintiffs cannot now claim unconstitutionality for a

14   condition they asked for," but below the line at this Note 9,

15   the Court goes through the analysis under the Nolan-Dollan

16   whether the condition is unconstitutional, and it found that,

17   "An essential nexus existed between the legitimate state

18   interest in managing and protecting the state's fishery and

19   permit condition, which required the exchange of licenses and

20   harvest opportunities.  Because the MDNR had

21   biological/conservationist goals in mind when conditioning" --

22   excuse me, "goals in mind when conditioning the Harbor Beach

23   license on exchange of the Saginaw Bay licenses, the Court

24   finds an essential nexus existed."

25   So I think that the record pretty clearly shows that as

1    far as plaintiffs' unconditional conditions argument goes,

2    they can't now claim that what they proposed is

3    unconstitutional by the state, and even if it were, and this

4    is outlined in our brief in support of motion to dismiss, even

5    under the Nolan-Dollan there's that essential nexus between

6    the state's interest and the conditions placed on the Harbor

7    Beach license.

8         I would also like to take a moment to point out that this

9    case has been pending before the Court for 460 days

10   approximately, and at no point have the plaintiffs discussed

11   how the Harbor Beach license would fare under this

12   Roth-Sindermann analysis.  And I think that that's pretty

13   telling, because under that analysis, as I've already

14   discussed today and have briefed extensively between the two

15   motions we're here to discuss today with your Honor, this case

16   is not on all fours with Roth, but it has so many --

17   acknowledges facts, including as the Court found in Roth, Roth

18   had a fixed term of one year to teach at the university.

19   Plaintiffs here had a fixed term.  I wouldn't necessarily call

20   it conceding, but the state doesn't dispute that from March

21   16, 2022, until December 31, 2022, the plaintiffs had a

22   protected property right to fish at Harbor Beach.  There's no

23   dispute there.  And if the state had taken an action at any

24   time in that time frame to revoke or suspend, Part 473 at

25   47302(4) provides that if the agency wanted to revoke or

1    suspend the license, it was subject to the contested case part

2    of the Administrative Procedures Act.  That's not what's been

3    alleged here.  On the face of plaintiffs' complaint, they

4    complain about not having a license renewed.

5        In our reply brief at ECF 59, Page ID 1733, we outline

6    how under both Part 473 and the APA renewal is not subject to

7    either procedure.  And as your Honor pointed out, unless a

8    license falls under this grandfathering provision, which we

9    know the Harbor Beach license doesn't, then notwithstanding

10   the department has a discretion whether to issue commercial

11   fishing licenses, and it must have this discretion.  Managing

12   natural resources, especially one as volatile as fish that are

13   subject to so many influencing factors, has to be in the

14   discretion of the department to manage to some extent.

15       I would also like to point out, and this is kind of

16   veering into plaintiffs' motion, but I heard -- I heard

17   brother counsel up here today saying that the department

18   violated due process when they didn't add species to their

19   other licenses.  We briefed this issue in response to their

20   motion for partial summary judgment.  And claims were not

21   alleged as violations of due process.  They're clearly state

22   law claims on the face of the complaint, and at ECF 43, Page

23   ID 1209, Paragraph 10, plaintiffs say that this Court has

24   supplemental jurisdiction over their state law claims as

25   briefed, and we can discuss this more when we move on to

1    plaintiffs' motion today, it can't now ambush the department

2    by making these claims anything but what they are, and they're

3    clearly brought under state law.

4        And then finally I will just reiterate the plaintiffs'

5    argument when it comes to how the Administrative Procedures

6    Act interacts with Part 473.  If we take their argument on

7    face value that it was a continuing nature and so timely

8    applying it didn't expire, the department made a final

9    decision when it issued the Saginaw Bay licenses and not the

10   Harbor Beach license on March 1, 2023, also reflected in the

11   letter sent from the Department of Attorney General to

12   plaintiffs on March 2 reiterating that point.  But, again, it

13   is not the APA that gives an individual a protected property

14   right.  It is the substantive law, and plaintiffs find no

15   shelter in 473 for the Harbor Beach license.

16       THE COURT:  All right.  Thank you.  Mr. Young, go

17   ahead, sir.

18       MR. YOUNG:  Thank you.  Your Honor, I just want to

19   touch on a few things that sister counsel raised.  Regarding

20   Sindermann, the -- my clients here have the commercial fishing

21   licenses, and just as in these Michigan Supreme Court cases

22   where there was the kind of distinction between the one

23   professor who had the expectation and the one who did not, in

24   our situation here, the APA acts as kind of the additional

25   bit, just like the handbook in one of the U.S. Supreme Court

1    cases where my clients and other licensees could think, oh, if

2    I apply timely, then I will get notice and an opportunity to

3    be heard on my license before the agency takes some adverse

4    action to it.

5        And then also sister counsel mentioned a final decision.

6    A letter from the Department of the Attorney General is not a

7    final decision from the DNR, and there's never been an agency

8    order that's been issued either.  Let's see.  Oh, sister

9    counsel also mentioned the nexus analysis.  And regarding

10   that, even if there is a nexus, there's still the issue of

11   just compensation for the taking of the property.  But in

12   addition, and perhaps just as importantly or even more

13   importantly, the other aspect of that analysis is the rough

14   proportionality element which has never been addressed,

15   because even if there is a nexus, the next step is is there a

16   rough proportionality between the plaintiffs' property, what

17   that person wants to do, and the consequences of taking it,

18   and the supposed benefits to the public if the government

19   does, in fact, take the property.  That's never been

20   addressed.  And especially at the pleading stage, we allege

21   that that proportionality is such that it's unconstitutional.

22   But, again, the agency never addressed that.

23       And in addition, your Honor, I just want to reemphasize

24   that in the section of the commercial fishing statute that has

25   the other conditions, later down in Subsection 4 of the same

1    section, it specifically contemplates the applicability of the

2    APA.  I just wanted to reemphasize that.  If you have any

3    other questions, your Honor, on this, I'm happy to field them,

4    but I'm also happy to wait for the summary judgment.

5         Two last points, your Honor.  Again, sister counsel

6    concedes that my clients had a property interest in the Harbor

7    Beach license from I think it was March to December, and

8    property rights don't just vanish.  And as there's been

9    discussion today, the APA interlocks to stop the expiration of

10   the license so that disputes about it can be adjudicated so

11   that the government doesn't run roughshod over the holders of

12   commercial licenses.

13         THE COURT:  Thank you, Counsel.

14   We have got a (b)(6) motion on the First Amendment as

15   well.  Let's move to that one at this point.

16         MS. ALOE:  Yes, your Honor, and, you know, I'm sure

17   we have already beat this horse, but their First Amendment

18   claim also rests on a property issue, because they said that

19   the department took an adverse action against plaintiffs

20   because plaintiffs said that they would not exchange their

21   Saginaw Bay licenses for their Harbor Beach license.  We

22   briefed this issue how the record firmly shows that this idea

23   of an exchange goes back years in the making, first offered by

24   Dana Serafin and then incorporated into the 2015 through 2019

25   research permits and the 2020 to 2022 Harbor Beach license.

1    And that before Dana engaged in the protected speech, it was a

2    choice between Harbor Beach or the Saginaw Bay licenses.

3    After he engaged in the protected speech, it was a choice

4    between the Harbor Beach license and the Saginaw Bay licenses.

5    The department didn't take an adverse action because of Dana's

6    speech.  It was simply trying to negotiate a permanent license

7    as contemplated since as early as 2008.

8         So unless if your Honor has any other questions, the

9    state will rest on its brief on the First Amendment issue.

10             THE COURT:  Thank you.  Counsel, go ahead.

11             MR. YOUNG:  Thank you, your Honor.  Just a couple

12   points here.  Sister counsel is trying to make the free speech

13   claim about property, but the free speech claim, naturally, is

14   about free speech.  And my client expressed a grievance to the

15   government, and there's really probably no more speech

16   deserving of protection than when a citizen is speaking to the

17   government and then the government comes back and takes an

18   adverse action against you.

19        In addition, we're at the pleading stage, so for the

20   government to come back and say, well, our reason for doing X,

21   Y, Z was different, factually different than what plaintiffs

22   say, that argument simply is not available to the government

23   at this stage.  Maybe down the line with discovery

24   depositions, interrogatories, maybe with all that maybe the

25   government can come back and say, oh, you know, we have an

1    affidavit from such and such and he says that his factual

2    reason for this was X, Y, Z, maybe, but that's down the line.

3             THE COURT:  Help me with the O'Brien distinction

4    between speech and conduct as it relates to the allegations in

5    this particular part of your complaint.  This is a (b)(6), so

6    I've got to assume that the allegations for purposes of this

7    motion are true, but help me with the difference, if any, in

8    this case between speech as you describe it and conduct.  You

9    don't get -- the case law would appear to say that not all --

10   not all speech is pure speech, that indeed you can't create

11   speech out of conduct, and I guess my question is as alleged

12   in the complaint why isn't what you have alleged conduct

13   rather than speech?

14            MR. YOUNG:  And that's some question, Your Honor.

15   Here it is speech rather than conduct because -- it would be

16   conduct if there had been no communication between Dana and

17   the government.  If he had just remained silent, had done

18   nothing, or if he had perhaps only applied for both sets of

19   licenses.  But instead here, your Honor, there are multiple

20   communiques back and forth between Dana and the government

21   that move it from the realm of mere conduct to actual

22   protected speech.  There are ideas that are conveyed in the

23   communiques back and forth which, again, distinguishes it from

24   mere conduct.

25            THE COURT:  Thank you.  Anything further?  I didn't

1    mean to cut you off, Mr. Young.  If you want to continue on

2    this particular issue, go ahead.

3         MR. YOUNG:  On the First Amendment front, ultimately

4    the government was trying to impose a take-it-or-leave-it

5    arrangement on Bailey, or sorry, on Dana in these -- regarding

6    the First Amendment claim, and Dana refused, and perhaps

7    understandably the government didn't like that, but that's

8    really what the government was trying to do.  It was trying to

9    really impose its will here.

10        And in addition, your Honor, I do want to -- well, no, I

11   guess I'll probably save that for the summary judgment, I

12   think.  But I think that's everything for the First Amendment.

13        THE COURT:  All right.  Thank you.  Counsel,

14   anything else on the First Amendment issue?

15        MS. ALOE:  Just briefly, your Honor.

16        Yes, we are early in this litigation, but plaintiffs

17   attached to their complaint Exhibits A through FF, and within

18   those exhibits it clearly shows that the department did not

19   take an adverse action, let alone an action because of speech.

20   No discovery is needed when the communication of the parties

21   is right before this Court, and any document incorporated into

22   a complaint is proper under the 12(b)(6) standard.  And as far

23   as the Court's question about whether this is conduct, I would

24   agree that the conduct was the Serafins decided they didn't

25   want to hold up their end of their deal, and so the department

1    acted accordingly.  It had to issue the Saginaw Bay licenses

2    under the grandfathering position.  It didn't have to issue

3    the Harbor Beach license until a permanent one was negotiated.

4    Mr. Serafin's communication shows that he wasn't interested in

5    that anymore.

6         Thank you.

7              THE COURT:  All right.  Thank you.

8         Any other argument on the defendants' motions?  We'll

9    move to the plaintiffs' motion at this point.  Go ahead,

10   Mr. Young.

11             MR. YOUNG:  I just had one more point that I meant

12   to bring at another time.  Sister counsel raised this idea

13   that the government has the option to rely on the idea that

14   plaintiffs offered this arrangement, and I just want to

15   emphasize for the Court that that is an argument that is

16   unavailable to the government.  As I mentioned before, the

17   government always has the obligation and requirement to act in

18   a way that is in line with the United States Constitution,

19   Michigan Constitution, so the government can't say, oh, well,

20   a citizen offered me this arrangement, so I guess it's okay.

21   That simply is not an available argument to the government.

22   The government can't use that to cure a constitutional

23   violation.  The government has an independent duty

24   irrespective of what a citizen may suggest or what a citizen

25   may agree to.  It can never cure a constitutional violation

1   with that theory.

2          THE COURT:  Thank you, Counsel.

3      All right.  Let's move to the plaintiffs' motion for

4   partial summary judgment.  Mr. Young, go ahead, sir.

5          MR. YOUNG:  Thank you, your Honor.  Some of this

6   will be ground we've already gone over, but just for the sake

7   of completeness, first regarding the Harbor Beach license, as

8   the government has conceded multiple times, there was a

9   property interest in it from March to December, and that's a

10  fatal concession on the government's part because, as we have

11  discussed, the Administrative Procedures Act operates to

12  cause the Harbor Beach license to not be expired, and that's

13  the government's -- that's the government's whole argument is

14  that the Harbor Beach license expired, so no property -- or

15  that there's no property right, and with no property right,

16  Fourteenth Amendment doesn't attach and all the rest.  So this

17  is really the pivot point, your Honor, is that because

18  plaintiff timely applied, the Administrative Procedures Act

19  operated to render the license nonexpired, and with an

20  unexpired license, the property right remains, Fourteenth

21  Amendment attaches, due process attaches and everything that

22  flows from that.

23          Next category, your Honor, is the Harbor Beach license

24  and the other conditions.  As we have discussed, some

25  conditions are permissible, but not any condition.  Not any

1    conceivable condition.  There are limits, and there are

2    examples in the statute.  Those examples reveal the nature of

3    what these conditions can be.  These conditions go to how

4    commercial fishing is performed.  They don't go to whether you

5    get a license or not.  And in addition, in that same part of

6    the commercial fishing section, in Subsection 4 it

7    specifically contemplates the applicability of the

8    Administrative Procedures Act when someone, a commercial

9    fishing license holder, has allegedly violated one of these

10   conditions.

11        So then going on, there are the Saginaw Bay hostage

12   licenses, which are intertwined with the Harbor Beach license.

13   The government imposed this Sophie's Choice, you can do one or

14   the other but not both.  And regarding those licenses, the

15   hostage ones, the Saginaw Bay hostage ones, pardon me, there

16   is a violation, a constitutional violation, because as there's

17   no dispute that there's a property interest in those because

18   those are pre-1968, so when the government says, oh, I'm going

19   to impose this condition, there's definitely a property right

20   being impacted.  But it's also the other way as well.  It's

21   bi-directional.  It's also the Harbor Beach license and

22   imposing a condition on that license as well that's also a

23   violation.

24        And then, your Honor, also there's the species licenses.

25   With those, unconnected to the first two sets, the species

1      licenses, plaintiffs requested the addition of species.  And,

2      again, these are pre-1968, so definitely a property right.

3      The government unlawfully refuses to add the species because

4      government did not offer notice and an opportunity to be

5      heard.  I just want to emphasize if the government would have

6      complied with the process, maybe the government could have

7      reached the conclusion that the government wanted to reach.

8      Maybe.  Our point is that there's a process in place to act as

9      guard rails to limit the government to make sure that the

10     government's not running roughshod over the property rights of

11     those who hold commercial fishing licenses.

12          Additionally, your Honor, as I mentioned before, the

13     government has almost entirely ignored Bailey, who is a

14     distinct legal entity, another plaintiff, he's an owner of the

15     licenses as well, and as I mentioned before, the government is

16     at least bordering on forfeiture by not offering argument

17     specifically regarding Bailey.  Bailey and Dana are not

18     interchangeable.

19          And alternatively, your Honor, regarding the issue about

20     whether the certain counts, I think 10 to 15, are state law

21     counts or federal law counts, we believe they are.  We have

22     incorporated every preceding prior paragraph.  We have also in

23     the allegations, specifically in these counts, we discuss how

24     there are violations that we think it's explicit, but at the

25     very least it's implicit that it violates procedural due

1    process of the Fourteenth Amendment.

2         If your Honor needs that to be more clear, we'd be happy

3    to amend.  We think it is sufficient how it is, but we're

4    happy to make it more explicit if need be.

5         So there's my overview, your Honor.  I'm happy to field

6    questions on this motion.  I mean, it's kind of -- this one is

7    kind of a more-targeted version of kind of the broader motion

8    that sister counsel has.

9              THE COURT:  I don't have any questions at this

10   point.

11             MR. YOUNG:  Okay.

12             MS. ALOE:  I feel like I need to do a little

13   clarification here.  The department agrees that while the

14   Harbor Beach license was in effect it was a protected property

15   right.  That's pretty obvious.  Everything that the plaintiffs

16   complain about took place after December 31, 2022.  And even,

17   again, if we assume they're correct that it didn't expire

18   until the department made its final decision, they still have

19   no property right in renewal of this license.

20        Under Part 473 Subsection 4 at 47302(4), it provides a

21   person a right to a contested case if the license is revoked

22   or suspended.  Similarly in the APA at 24.2922, it provides

23   suspension, revocation, annulment, withdrawal, recall,

24   cancellation.  Plaintiffs on the face of their complaint,

25   which can be seen as simple as looking at the titles at ECF

1    43, Page ID 1225 and ECF 43, Page ID 1231 complaining about

2    renewing the licenses for Michigan, 2023 commercial fishing

3    licenses, and a second page cite is for 2024, this is what

4    they complain of, renewal of the Harbor Beach license.  Under

5    the plain language of the substantive law, there is no right

6    to renewal.

7         As far as this idea that they can somehow change their

8    state law claims into federal claims, we briefed this issue.

9    A plaintiff is definitely allowed to incorporate preceding

10   paragraphs, but that doesn't transform them into anything but

11   what they are on their face.  That goes to basic civil

12   procedure requirements that they provide the defendants fair

13   notice of the claims against them, and here from plaintiffs'

14   complaint where they say these claims -- this Court has

15   jurisdiction over -- under the supplemental jurisdiction

16   provision in their expedited motion and their first motion for

17   leave to amend their complaint they say they wanted to add

18   state law claims, and on the face of the complaint these are

19   state law claims.

20        As far as being granted leave, plaintiffs are certainly,

21   you know, left to proceed how they see fit, but the department

22   will oppose that on the same grounds it opposed the first time

23   plaintiffs amended, and that is it futile because nothing

24   changes when it comes to this lack of a protected property

25   right in renewal of the Harbor Beach license.

1          And I would also just point the Court to MCL 324.47302.

2     Those subprovisions squarely put in the department's

3     discretion what type of fish can be taken by species and kind

4     and amount, how they can be taken, where they're taken.

5          Going back to Med Corp., plaintiffs don't have a property

6     right in something that is squarely left to the discretion of

7     the department.  When it comes to those matters, even if they

8     were pled as due process violations for not adding the

9     requested fish species, plaintiffs would still lose.

10         Otherwise I believe that the department, or state

11    defendants, excuse me, have adequately addressed the lack of a

12    property right in the Harbor Beach license and in our response

13    in opposition to plaintiffs' motion for partial summary

14    judgment, which I appreciate the Court letting me file two

15    days late.  We adequately also brief how they can't change the

16    nature of their allegations, and even if they were seeking

17    summary judgment on the allegations as pled under state law,

18    they would still lose.  So unless if your Honor has any

19    questions for me, I will rest on the briefing.

20              THE COURT:  Thank you.  No questions at this point.

21    Mr. Young, anything further?

22              MR. YOUNG:   Thank you, Your Honor.

23         Your Honor, given how the Administrative Procedures Act

24    interacts with the commercial fishing statute, the agency's

25    action effectively was a cancellation of the license, the

1    Harbor Beach license.  And we have a case, it's Bois Blanc

2    Island that touches on this.  And I can give you the ECF

3    number here.  I am on -- starts on ECF Number 55, Page ID 1643

4    at the bottom, and then it kind of goes over to the next page.

5    We have an explanatory parenthetical.  In that case, the Court

6    is concluding that because the DNR sought a revocation,

7    withdrawal, or cancellation of the licenses at issue, the

8    Michigan Administrative Procedures Act's requirements of

9    notice and an opportunity to be heard to show compliance with

10   the present case.  So it's supporting the idea that in our

11   scenario here, the Administrative Procedures Act reaches our

12   scenario.  And I understand why sister counsel wants to avoid

13   that, because who wants to be restrained?  I get that.  But we

14   have restraints on the government for a reason.  Again, it

15   doesn't stop the government from reaching a certain

16   conclusion.  It just puts processes in place to make sure the

17   government's not running roughshod over property rights.

18        I'm happy to field any other questions you have, your

19   Honor, again, regarding the Counts 10 to 15 if it's not

20   sufficiently explicit.  We think it is, but if it's not we'd

21   be happy to amend that.  But, again, it's noticed pleading.

22   We think it's done more than enough to put defendants on

23   notice that there are severe and serious due process

24   violations.  But if your Honor has questions, I'm happy to

25   answer them.

1          THE COURT:  I don't have any questions, Mr. Young,

2     thank you.

3          All right.  The Court will deem the motions submitted.

4     The Court's going to issue a written opinion on this.  I

5     appreciate the quality of the written submissions as well as

6     the oral arguments here today, and I'll get something out as

7     soon as I can.  Thank you.

8          THE CLERK:  All rise, please.  Court is adjourned.

9          (Proceedings concluded at 2:50 p.m.)

REPORTER'S CERTIFICATE

     I, Lauret J. Henry, Official Court Reporter for the
United States District Court for the Western District of
Michigan, appointed pursuant to the provisions of Title 28,
United States Code, Section 753, do hereby certify that the
foregoing is a full, true and correct transcript of the
proceedings had in the within entitled and numbered cause on
the date hereinbefore set forth; and I do further certify that
the foregoing transcript has been prepared by me or under my
direction.

                                   /s/ Lauret J. Henry
                                   Lauret J. Henry, CSR, RPR
                                   U.S. District Court Reporter
                                   410 West Michigan Avenue
                                   Suite 137
                                   Kalamazoo, MI 49007
                                   (269) 720-9529